UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALRIC DESMOND ACKERSON                    CIVIL ACTION

VERSUS                                    NUMBER: 19-09158

ANDREW SAUL,                              SECTION: "M"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Disability Insurance Benefits.  (Rec. docs. 13, 17, 18).[1/]

Alric Desmond Ackerson, *pro se* Plaintiff herein, filed the subject application for DIB on August 4, 2015, alleging disability as of June 10, 2015.  (Tr. pp. 200-206).  In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as diabetes and depression.  (Tr. pp. 226-232).  Plaintiff's application for DIB was denied initially and upon reconsideration.  (Tr. pp. 166-168, 170-172).  Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on August 24, 2017, at which Plaintiff, who was

---

[1/] Plaintiff has filed two separate cross-motions for summary judgment in this case. (Rec. docs. 13, 18).  The first motion, filed on October 8, 2019, was deemed deficient by the Clerk's Office as lacking the certificate of service required by FRCP 5(d)(1) and LR 5.4. (*See* rec. doc. 14).  After Plaintiff failed to correct the deficiency within a certain period of time, the Court issued an order directing him to re-file his motion, in compliance with LR 5.4, on or before January 22, 2020 and granted Defendant an extension of time within which to file his cross-motion. (Rec. doc. 15).  Upon further consideration, because a copy of Plaintiff's first motion was electronically transmitted to defense counsel upon being filed in the CM/ECF system, the Court vacated that portion of its original order directing Plaintiff to re-file his cross-motion. (Rec. doc. 16).  Although relieved of the necessity of re-filing his original motion with the required certificate of service, Plaintiff proceeded to file a second cross-motion for summary judgment on February 20, 2020. (Rec. doc. 18).  As will be discussed *infra*, the two motions are by no means identical.

represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 173-174, 126-147). On November 22, 2017, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 83-99). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on September 28, 2018 after considering a supporting brief submitted by his attorney. (Tr. pp. 13-19). On November 21, 2018, the AC set aside that decision to consider additional information submitted by his attorney but once again denied Plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 6-12). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In his first cross-motion for summary judgment, Plaintiff framed the issue for judicial review as follows:

> Is the plaintiff entitled to summary judgment on the grounds that there is no genuine issue as to any material fact and the plaintiff is entitled to judgment as a matter of law?

> (Rec. doc. 13-1, p. 4).

In his second cross-motion for summary judgment, Plaintiff cast the issue for judicial review in the following fashion:

> Whether summary judgment under Rule 56 of the FRCP should be granted for the plaintiff on the grounds that there is no genuine issue of material fact because the defendant applied the wrong legal standard against the adjusted claim for peripheral neuropathy which violated plaintiff's fundamental constitutional rights to due process of law and the finding that the claimant is not disabled, and the subordinate findings on which that finding rests, are not supported by substantial evidence in the record as a whole.?

> (Rec. doc. 18-2, p. 8).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2.  The claimant has not engaged in substantial gainful activity since June 10, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments:  Type II diabetes mellitus with neuropathy, effects of bilateral toe amputations, hypertension, chronic pain syndrome, and gastroparesis  (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand or walk two hours each in an eight-hour workday.  He can sit six hours in an eight-hour workday, with an option to sit or stand after 30 minutes.  Additionally, he can occasionally balance, stoop, kneel, crouch and crawl.  However, he can never climb ramps and stairs or climb ladders, ropes or scaffolds. Finally, the claimant must avoid concentrated exposure (no more than frequent) to dangerous, moving machinery and unprotected heights.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on April 25, 1982 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2015 through the date of this decision (20 CFR 404.1520(g)).

(Tr. pp. 88, 90, 93, 94, 95).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries:    (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.    42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971).   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).

Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made; and,

5. If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. *Fraga*, 810 F.2d at 1304 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fraga*, 810 F.2d at 1302.

As noted above, before the Court are two separate cross-motions for summary judgment that were filed by Plaintiff. The overarching theme throughout Plaintiff's first motion centers on the effectiveness of the attorney who he retained and who represented him at the hearing before the ALJ. Plaintiff argues that his claim for benefits was not fully developed at the administrative hearing secondary to "ineffective representation" who failed to question the vocational expert ("VE") with any hypothetical facts and that the ALJ erred in subsequently closing the record without the inclusion of questioning regarding peripheral neuropathy, which is allegedly supported by the medical records and Plaintiff's hearing testimony. Plaintiff further argues that the primary basis of his claim for benefits was peripheral neuropathy, not diabetes, which should have been evaluated against the criteria of Section 11.4 of the Listing of Impairments and that the lack of such an inquiry rendered the five-step sequential evaluation incomplete and deprived him of a fair hearing. Finally, Plaintiff argues that the ALJ did not insure that he had a fair hearing by questioning

whether his attorney was competent and that the ALJ's duty to develop the record includes the obligation to essentially "fill in the gaps" left by his attorney.

The Fifth Circuit has held that a claimant has no constitutional right to counsel in a Social Security proceeding. *Cornett v. Astrue*, 261 Fed.Appx. 644, 651 (5th Cir. 2008)(citing *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992)). It follows, therefore, that a claim of ineffective assistance of counsel is not cognizable in a civil action like this one seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration. *Russell on Behalf of Russell*, 62 F.3d 1421, 1995 WL 472681 at *2 (8th Cir. 1995)(table); *Payne v. Astrue*, No. 11-CV-1544, 2012 WL 1090054 at *6 (E.D. La. Feb. 27, 2012), *adopted*, 2012 WL 1089959 (E.D. La. Mar. 30, 2012). Moreover, "'[a] social security claimant who was represented by counsel of his choosing cannot at a later date complain that the representation was inadequate.'" *Diggs v. Astrue*, No. 10-CV-2537, 2011 WL 2447509 at *16-17 (D. N.J. Jun. 14, 2011), *aff'd*, 454 Fed.Appx. 880 (3rd Cir. 2011)(quoting *Dowd v. Commissioner of Social Security*, No. 08-CV-1272, 2009 WL 2246153 at *6 (W.D. Pa. Jul. 26, 2009)). It is the claimant, and not the ALJ, who bears the burden of providing the medical and other evidence that establishes his disability. *Przybylski v. Saul*, No. 18-CV-0996, 2019 WL 4393152 at *6 (E.D. Wis. Sep. 12, 2019). While the ALJ does have a duty to develop a complete record, the ALJ's duty to do so is extremely limited where the claimant is represented by counsel at the administrative level. *Id.* (citing *Nicholson v. Astrue*, 341 Fed.Appx. 248, 253-54 (7th Cir. 2009)). An ALJ may properly assume that a claimant's strongest case for benefits has been made when the claimant seeking benefits is represented by counsel. *Glenn v. Sec. of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987); *Vasquez v. Colvin*, No. 11-CV-0494, 2013 WL 2180746 at *4 (W.D. Tex. May 17,

2013).   Although a claimant undoubtedly has a due process right to a hearing that is fundamentally fair, that right typically extends only to a right to counsel at an administrative hearing, an impartial decisionmaker, and the opportunity to cross-examine experts.  *Diggs*, 2011 WL 2447509 at *21 (emphasis added).  Mere allegations of a "due process violation" do not suffice.  *Alexander v. Colvin*, No. 12-CV-1809, 2013 WL 5785567 at *9 (S.D. Tex. May 16, 2013).

Here, because Plaintiff was represented by counsel at the administrative hearing held below, the ALJ could properly assume that Plaintiff's strongest case had been made. Although Plaintiff assails counsel for failing to question the ALJ with "hypothetical facts," he nowhere identifies with any precision what those omitted facts were.   It must be remembered that an ALJ may properly make a fifth-step determination without the services of a VE where the claimant suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity.  *Fraga*, 810 F.2d at 1304.   While Plaintiff identified depression as a basis for disability in his application for DIB, the ALJ found, at the second step of the §404.1520 sequential analysis, that it was not a severe impairment, a finding that Plaintiff does not directly challenge here. That being the case, the ALJ could have made his fifth-step determination without any testimony from a VE.   As will be discussed below, because the Court believes that the criteria of Listing 11.14  have not been met, Plaintiff was not prejudiced by his attorney's failure to argue that point.[2]   Plaintiff fully availed himself of the administrative claims process, was afforded a hearing before an ALJ, and exercised his right to judicial review

---

[2] The Court notes that a different legal representative appeared on Plaintiff's behalf in proceedings before the AC who made no complaints about the effectiveness of Plaintiff's first attorney at the ALJ hearing level. (Tr. pp. 300-324, 325-372, 373-374).

through this proceeding.  It is the full and fair <u>opportunity</u> to present one's case that is the

cornerstone of a claimant's due process right to a fair hearing.  *Cornett*, 261 Fed.Appx. at

651.  The arguments raised in Plaintiff's first motion are without merit.

In his second cross-motion for summary judgment, Plaintiff shifts the focus of his

challenge from an attack on his attorney's ineffectiveness to alleged error on the part of the

ALJ.  More specifically, Plaintiff argues that the ALJ applied an incorrect legal standard by

considering his diabetes without separately reviewing the "... adjusted basis of his

subjective complaints of peripheral neuropathy" which should have been evaluated against

the criteria of Listing 11.14.  Plaintiff further argues that the medications that he takes for

neuropathic pain were not evaluated by a psychiatrist for possible side effects and that the

ALJ erred by relying upon the report of a consultative psychologist.  Finally, Plaintiff points

to an affidavit appended to his motion as support for the fact that peripheral neuropathy

caused nerve damage to his legs and feet which affect his ability to stand and walk and that

the ALJ violated SSR 00-4p by failing to adequately explore possible but unidentified

conflicts between the VE's testimony and the information set forth in the Dictionary of

Occupational Titles ("DOT").

In addressing Plaintiff's second motion the Court initially notes he failed to list

"peripheral neuropathy" as a disabling condition in his application for DIB, identifying only

diabetes and depression as the conditions limiting his ability to work.  (Tr. pp. 227, 254,

256).[3]  *See Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989)(failure to identify a

---

[3] Effective June 7, 2011, Sections 9.02 through 9.08 of the Listing of Impairments at 20 C.F.R. Part 404,
Subpart P, Appendix 1, dealing with endocrine impairments, including diabetes, thyroid disorders, and
adrenal disorders, were removed from the Listing of Impairments as being *per se* disabling conditions if
certain specified criteria were met. *Knotts v. Colvin*, No. 14-CV-0692, 2015 WL 5547474 at *3 (N.D. Tex. Aug.
27, 2015), *adopted*, 2015 WL 5547014 (N.D. Tex. Sep. 16, 2015).  Well before that amendment to the Code of
Federal Regulations the Fifth Circuit had considered diabetes to be a remediable condition and thus not

condition as disabling).  Nevertheless, at the second step of the §404.1520 analysis the ALJ in the present case found that Plaintiff suffered severe impairments in the form of Type II diabetes millitus with neuropathy, effects of bilateral toe amputations, hypertension, chronic pain syndrome, and gastroparesis.  (Tr. p. 88).  Proceeding to step three, the ALJ then found that the foregoing impairments, while severe, did not satisfy the criteria of any of those set forth in the Listing of Impairments, specifically identifying Sections 9.00(B)(5) and 4.00(H)(1) as those against which Plaintiff's conditions were evaluated.  (Tr. p. 90).  As required by the Regulations, the ALJ then made an assessment of Plaintiff's residual functional capacity to work, thereafter discussing, in considerable detail, the testimonial and documentary evidence upon which his findings were based.  (Tr. pp. 90-93). To the extent that Plaintiff's second cross-motion can be read as alleging that the ALJ erred in failing to specifically identify Section 11.14 as a listing against which his condition was measured, Plaintiff must show that his substantial rights have been affected.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)(quoting *Mays*, 837 F.2d at 1364).  That showing typically requires a claimant to demonstrate that his impairment satisfies the criteria of a particular listing.  *Id.* at 448-49; *Hermosillo v. Astrue*, No. 10-CV-0198, 2011 WL 4528206 at *4-5 (N.D. Tex. Sep. 12, 2011), *adopted*, 2011 WL 4528374 (N.D. Tex. Sep. 30, 2011); *Moore v. Astrue*, No. 07-CV-0422,  2008 WL 4602732 at *2 (N.D. Tex. Aug. 13, 2008).

Because the ALJ in the present case proceeded past step three of the §404.1520 analysis, an argument could be made that he implicitly found that Plaintiff's impairment did not satisfy the criteria of Section 11.14 even though that listing was not specifically identified.  *Hernandez v. Heckler*, 704 F.2d 857, 860 (5th Cir. 1983); *Smith v. Astrue*, 914

---

disabling under the Social Security Act. *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)(citing *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980)).

F.Supp.2d 764, 783 (E.D. La. 2012); *Moore*, 2008 WL 4602732 at *2 n. 5. To the extent that the ALJ erred in failing to specifically cite Section 11.14, the question becomes whether Plaintiff has met his burden of establishing that he satisfied the criteria of that listing for a continuous period of 12 months or more such that any error on the part of the ALJ may be deemed harmless.

Section 11.14 of the Listing of Impairments provides that an individual will be deemed disabled if he suffers from:

> 11.14  *Peripheral neuropathy*, characterized by A or B:
>
>> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use [of] the upper extremities; or
>>
>> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following;
>>
>>> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>>
>>> 2. Interacting with others (see 11.00G3b(ii)); or
>>>
>>> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii); or
>>>
>>> 4. Adapting or managing oneself (see 11.00G3b(iv)).

In addition to the definitions referenced in "A" and "B" of Listing 11.14, the introductory paragraphs to the Section 11.00 listings, titled "NEUROLOGICAL DISORDERS," provides the following guidance on what disorders are evaluated thereunder:

> A. *Which neurological disorders do we evaluate under these listings?* We evaluate epilepsy, amyotrophic lateral sclerosis, coma or persistent vegetative state (PVS), and neurological disorders that cause disorganization of motor function, bulbar and neuromuscular dysfunction, communication impairment, or a

combination of limitations in physical and mental functioning. We evaluate neurological disorders that may manifest in a combination of limitations in physical and mental functioning. For example, if you have a neurological disorder that causes mental limitations, such as Huntington's disease or early-onset Alzheimer's disease, which may limit executive functioning (e.g., regulating attention, planning, inhibiting responses, decision-making), we evaluate your limitations using the functional criteria under these listings (see 11.00G). Under this body system, we evaluate the limitations resulting from the impact of the neurological disease process itself. If your neurological disorder results in only mental impairment or if you have a co-occurring mental condition that is not caused by your neurological disorder (for example, dementia), we will evaluate your mental impairment under the mental disorders body system, 12.00.

As this is a third-step inquiry under §404.1520, it is the claimant who bears the burden of proving that his impairment or combination of impairments meets or equals a listing. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). "For a claimant to show that his impairment matches a listing, it must meet <u>all</u> of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990)(footnote omitted).

Initially, given the introductory comments to the Section 11.00 listings regarding the neurological, as opposed to endocrine, disorders to which they apply, it is not entirely clear whether Listing 11.14 applies at all to diabetes. Although Plaintiff argues that his condition should have been evaluated under Listing 11.14, he does not identify which paragraph of the Listing, "A" or "B," his condition purportedly satisfied. Nor does Plaintiff direct the Court to any medical evidence in the record supporting his contention that he was disabled under Listing 11.14. As a party moving for summary judgment, Rule 56(c)(1)(A) requires him to cite those portions of the record that support his position. *See*, *e.g.*, *Taylor v. Colvin*, No. 15-CV-3418, 2016 WL 6683530 at *6 (E.D. La. Jul. 26, 2016), *adopted*, 2016 WL

6680402 (E.D. La. Nov. 14, 2016).[4/]    "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's ... [motion for] summary judgment.'"    *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998)(quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98 (1992)).    In the Social Security context, "[t]he burden of proof rests with a claimant to provide and identify <u>medical signs and laboratory findings</u> that support <u>all</u> criteria for a Step 3 impairment determination."    *Frank v. Barnhart*, 455 F.Supp.2d 554, 562 (E.D. Tex. 2006)(citing *Sullivan*, 493 U.S. at 530, 110 S.Ct. at 891)(emphasis in original).    "A claimant may not establish Listings level severity through subjective testimony."    *Id.*

Notwithstanding Plaintiff's failure to cite objective medical evidence establishing all of the criteria of Listing 11.14(A) or 11.14(B), the Court has independently undertaken a review of the entire record and can find no such evidence.    When Plaintiff was hospitalized for a toe amputation in September of 2015 it was noted that he was still able to perform the activities of daily living and to ambulate independently.    (Tr. pp. 392-395).    Although he was provided a boot following surgery to his right foot in August of 2016 and apparently began using similar footwear on his left foot at some point, by October 28, 2016, Plaintiff was described as "doing well" and "feel[ing] better" and was instructed that use of the boot could be discontinued as his wounds had by then healed.    (Tr. pp. 439-442, 490-491). When seen by Dr. Douglas Blackledge on December 21, 2016 who noted that he suffered from "neuropathic oddities," Plaintiff was noted to ambulate without a cane and to have

---

[4/] Although *pro se* pleadings are liberally construed, the requirements of Rule 56 still apply. *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *Johnson v. Luckett*, No. 14-CV-0803, 2016 WL 1091876 at *3 (S.D. Miss. Mar. 21, 2016), *appeal dis'd*, 2017 WL 4857472 (5th Cir. Jun. 29, 2017).

good balance with only prolonged standing being limited secondary to pain.  A physical examination revealed only a mildly antalgic gait with no clubbing or cyanosis, 5/5 strength throughout, normal muscle bulk and tone, and sensation that was "by and large" intact to both lower extremities.  (Tr. pp. 503-505).  Similar physical examination findings were recorded on January 18, 2017.  (Tr. pp. 506-508).  The Court could locate no objective medical evidence of disorganization of motor function in two extremities resulting in the extreme limitations required by Listing 11.14(A), nor of a marked limitation of physical functioning with the deficits identified in subparagraphs "1" to "4" that are necessary to satisfy the criteria of Listing 11.14(B).  About such proof, Plaintiff has not demonstrated that his substantial rights have been affected and any error on the part of the ALJ at step three of the §404.1520 analysis was harmless. *Smith*, 914 F.Supp.2d at 785.

As for Plaintiff's complaint regarding the ALJ's alleged failure to comply with SSR 00-4p, that contention is simply not borne out by the record.  At the administrative hearing held on August 24, 2017, after eliciting information from the VE regarding the existence of jobs that Plaintiff could perform despite his impairments, the following exchange between the ALJ and the VE occurred:

> Q    No work.  And has your testimony been consistent with the Dictionary of Occupational Titles?
>
> A    Yes, sir.
>
> Q    A sit/stand option, absenteeism, factors not addressed in the DOT, how do you base your opinion?
>
> A    On my education, my experience, my field work, and research.
>
> Q    Otherwise, it's consistent, ma'am?
>
> A    Yes, sir.

(Tr. p. 145).

In the written opinion that he subsequently issued on November 22, 2017, the ALJ observed as follows:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT, except that [the] sit-stand option is not specifically addressed in the DOT. The vocational expert testified that she based her opinion of the sit/stand option on her education, experience, field work, and research. The undersigned accepts this testimony.

(Tr. p. 95).

Given this exchange, and no showing having been made that the VE's testimony was actually inconsistent with the DOT, SSR 00-4p was sufficiently complied with. *Towner v. Berryhill*, No. 18-CV-0459, 2019 WL 3539817 at *4-5 (S.D. Miss. Jul. 17, 2019), *adopted*, 2019 WL 3536959 (S.D. Miss. Aug. 2, 2019). Finally, as licensed psychologists are "acceptable medical sources" under the Regulations, 20 C.F.R. §404.1502(a)(2), the ALJ did not err in relying upon her opinions in adjudicating Plaintiff's application for DIB.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's cross-motions for summary judgment be denied, that Defendant's cross-motion for summary judgment be granted, and that Plaintiff's suit be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that

such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[5]

      New Orleans, Louisiana, this __7th__ day of _____ August _____, 2020.

                                    _____
                                      MICHAEL B. NORTH
                        UNITED STATES MAGISTRATE JUDGE

---

[5] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.